UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLAS A.N. CHARLES,<br><br>　　　　　　　Plaintiff,<br><br>　　　-v.-<br><br>EXCESS TELECOM,<br><br>　　　　　　　Defendant. | 24 Civ. 9181 (KPF) |
| NICOLAS A.N. CHARLES,<br><br>　　　　　　　Plaintiff,<br><br>　　　-v.-<br><br>T-MOBILE USA, INC. and ASSURANCE<br>WIRELESS,<br><br>　　　　　　　Defendants. | 25 Civ. 702 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Nicolas A.N. Charles, who is proceeding *pro se*, brought the two above-captioned actions against three telecommunications companies, Defendants Excess Telecom ("Excess"), T-Mobile USA, Inc. ("T-Mobile"), and Assurance Wireless ("Assurance").  In the first action, Mr. Charles alleges that Excess submitted fraudulent applications for telecommunications services using his identity, thereby committing identity theft, a violation of New York General Business Law Section 349, common-law fraud, and common-law negligence.  In the second action, Mr. Charles accuses Assurance of disconnecting his phone and preventing him from applying for an account with a different carrier.

Because Mr. Charles raises similar claims in both cases arising out of his common struggles with telecommunications services, the Court addresses them together.  Before the Court are (i) Excess's motion to dismiss the operative complaint in Case No. 24 Civ. 9181 under Federal Rule of Civil Procedure 12(b)(1), (ii) T-Mobile's motion to dismiss the operative complaint in Case No. 25 Civ. 702 under Federal Rule of Civil Procedure 12(b)(6), and (iii) Assurance's motion to compel arbitration in Case No. 25 Civ. 702.  For the reasons set forth below, the Court grants all three motions.

**BACKGROUND**[1]

**A.    Factual Background**

Mr. Charles is a citizen and resident of New York.  (Case No. 24 Civ. 9181, SAC ¶ 4).  On two separate occasions in 2024, Excess — with which Mr. Charles has had no commercial relationship — allegedly submitted applications for cellular service on Mr. Charles's behalf without his knowledge or consent.  (*Id.* ¶¶ 9-10).  The applications contained personally identifiable

---

[1]    This Opinion draws its facts from the Second Amended Complaint (the "SAC" (Dkt. #27)) in Case No. 24 Civ. 9181 and the Complaint ("Compl." (Dkt. #1)) in Case No. 25 Civ. 702, the well-pleaded allegations of both are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009).  The Court also relies, as appropriate, on the declaration of Brian Bollig in support of Assurance's motion to compel arbitration ("Bollig Decl." (Case No. 25 Civ. 702, Dkt. #33)) and Exhibit A attached thereto ("Bollig Decl., Ex. A" (Case No. 25 Civ. 702, Dkt. #34)).

For ease of reference, the Court refers to Excess's memorandum of law in support of its motion to dismiss as "Excess Br." (Case No. 24 Civ. 9181, Dkt. #29); T-Mobile's memorandum of law in support of its motion to dismiss as "T-Mobile Br." (Case No. 25 Civ. 702, Dkt. #44); and Assurance's memorandum of law in support of its motion to compel arbitration as "Assurance Br." (Case No. 25 Civ. 702, Dkt. #32).  Mr. Charles did not oppose Excess's motion to dismiss, T-Mobile's motion to dismiss, or Assurance's motion to compel arbitration.

2

information, including Mr. Charles's date of birth and the last four digits of his Social Security number.  (*Id.* ¶ 11).

Upon discovering the allegedly unauthorized applications, Mr. Charles contacted Excess, which told him that an account had been opened in his name and then subsequently closed on or about September 5, 2024.  (Case No. 24 Civ. 9181, SAC ¶¶ 15-16).  Excess also stated that the address associated with the account was in Staten Island, New York, even though Mr. Charles had never lived at that address or in Staten Island.  (*Id.* ¶¶ 17-18).  According to Mr. Charles, the property at the address in Staten Island was a vacant house, leading him to believe that he was the victim of a fraudulent identity theft scheme.  (*Id.* ¶¶ 19-22).  Consequently, he filed an identity theft report with the Federal Trade Commission and a separate fraud report.  (*Id.* ¶ 23).

Unlike his relationship with Excess, Mr. Charles was a customer of Assurance, which provided telecommunications services.  (*See generally* Case No. 25 Civ. 702, Compl.).  On or about January 5, 2025, Mr. Charles contacted Assurance about a defective phone issue.  (*Id.* at 1).  According to Mr. Charles, "Assurance … disconnected [his] phone and wasted three hours of his time misrepresenting their actions." (*Id.*).  Then, three days later, Mr. Charles's entire account with Assurance was disconnected.  (*Id.* at 2).  As a result, Mr. Charles applied to a different carrier that "offered a better deal" for telecommunications services, but he was unable to do so because Assurance allegedly blocked the phone that it had disconnected and prevented Mr.

3

Charles from opening a new account.  (*Id.*).  Because of his telecommunications struggles, Mr. Charles was also unable to "partially regain his lost position as an Executive Operations Officer for Trinity Enterprises."  (*Id.*).

**B.    Procedural Background**

Mr. Charles filed three related cases in this Court — the two above-captioned actions as well as Case No. 24 Civ. 3461 (the "Unity Wireless Action") — all three of which involve his common struggles with telecommunications services.  On August 14, 2025, Mr. Charles filed a motion to consolidate the three cases.  (Case No. 24 Civ. 3461, Dkt. #53; Case No. 24 Civ. 9181, Dkt. #17; Case No. 25 Civ. 702, Dkt. #26).  After receiving Defendants' position letters in each of the three cases, the Court denied the motion to consolidate on September 11, 2025.  (Case No. 24 Civ. 3461, Dkt. #58; Case No. 24 Civ. 9181, Dkt. #23; Case No. 25 Civ. 702, Dkt. #40).  Thereafter, the Court resolved the Unity Wireless Action by granting Defendant's motion to dismiss in that case.  (*See* Case No. 24 Civ. 3461, Dkt. #59).  The Court now recounts the procedural history of each of the two remaining actions.

**1.    The Excess Action**

On December 2, 2024, Mr. Charles filed a complaint against Excess. (Case No. 24 Civ. 9181, Dkt. #1).  He subsequently amended his complaint on June 18, 2025.  (Case No. 24 Civ. 9181, Dkt. #9).  In response, on September 10, 2025, Excess filed a pre-motion letter in anticipation of moving to dismiss Mr. Charles's claims under Rules 12(b)(1) and 12(b)(6), and it

requested that the Court dispense with its typical requirement of holding a pre-motion conference.  (Case No. 24 Civ. 9181, Dkt. #22).

In its September 11, 2025 Order denying Mr. Charles's motion to consolidate the three related cases, the Court also granted Excess's request to dispense with a pre-motion conference, gave Mr. Charles an opportunity to amend his complaint against Excess, and set a briefing schedule for Excess's motion to dismiss.  (Case No. 24 Civ. 9181, Dkt. #23).  On October 10, 2025, Mr. Charles filed his Second Amended Complaint (the "SAC"), the operative complaint in the Excess case.  (Case No. 24 Civ. 9181, Dkt. #27).[2]  The SAC asserts four claims based on Excess's alleged submission of fraudulent applications for cellular service using Mr. Charles's identity: (i) identity theft in violation of New York law; (ii) a violation of New York General Business Law Section 349, which prohibits deceptive business acts and practices; (iii) common-law fraud; and (iv) common-law negligence.  (SAC ¶¶ 29-48).

On November 19, 2025, Excess filed its motion to dismiss and supporting papers.  (Case No. 24 Civ. 9181, Dkt. #28-29).  On January 28, 2026, after the original deadline for Mr. Charles's opposition had passed, the Court issued an Order adjourning the deadline to February 20, 2026, in light of Mr. Charles's *pro se* status.  (Case No. 24 Civ. 9181, Dkt. #31).  In the same Order, the Court warned Mr. Charles that failure to respond by the extended

---

[2]    Mr. Charles filed another complaint on January 26, 2026 (Case No. 24 Civ. 9181, Dkt. #30), but it is identical to the SAC.  Therefore, the Court considers the SAC, which was filed on October 10, 2025, according to the Court's schedule, as the operative complaint in Case No. 24 Civ. 9181.

deadline would result in the Court's treatment of Excess's motion as unopposed. (*Id.*). To this day, Mr. Charles has not filed his opposition. Therefore, the Court considers Excess's motion to be unopposed.

### 2.    The T-Mobile and Assurance Action

On January 23, 2025, Mr. Charles filed a complaint against T-Mobile and Assurance (the "Complaint"). (Case No. 25 Civ. 702, Dkt. #1). The Complaint alleges that T-Mobile and Assurance "disconnect[ed] [Mr. Charles's] Lifeline phone service without cause" and that Assurance "actively prevent[ed] [Mr. Charles] from receiving service elsewhere." (Compl. at 1). Mr. Charles seeks $100 million in compensatory and punitive damages, but the Complaint does not specify any legal causes of action. (*See generally* Compl.).

Then, on June 11, 2025, the Court held an initial pretrial conference, at which Mr. Charles and T-Mobile appeared telephonically, to discuss issues of service on Assurance. (Case No. 25 Civ. 702, Dkt. #19; *see* Case No. 25 Civ. 702, June 11, 2025 Minute Entry). After service on Assurance was successful, Assurance appeared in the case. (*See* Case No. 25 Civ. 702, Dkt. #20-22). On September 3, 2025, T-Mobile filed a request for a pre-motion conference in anticipation of moving to dismiss the Complaint under Rule 12(b)(6). (Case No. 25 Civ. 702, Dkt. #30). That same day, Assurance filed a motion to compel arbitration and supporting papers. (Case No. 25 Civ. 702, Dkt. #31-35).

In its September 11, 2025 Order denying Mr. Charles's motion to consolidate the three related cases, the Court also dispensed with its typical requirement of holding a pre-motion conference and set the same briefing

schedule for T-Mobile's motion to dismiss as the one for Excess's motion to dismiss in Case No. 24 Civ. 9181, including an opportunity for Mr. Charles to amend his pleading. (Case No. 25 Civ. 702, Dkt. #40). In addition, the Court directed Mr. Charles to respond to Assurance's motion to compel arbitration on or before October 10, 2025. (*Id.*). On October 23, 2025, after the deadline for Mr. Charles to amend his pleading had passed, the Court issued another Order confirming that Mr. Charles did not wish to file an amended complaint in Case No. 25 Civ. 702 and directing T-Mobile to file its motion to dismiss based on Mr. Charles's existing complaint. (Case No. 25 Civ. 702, Dkt. #42). As a result, the original Complaint remains the operative pleading in this case.

On November 19, 2025, T-Mobile filed its motion to dismiss and supporting papers. (Case No. 25 Civ. 702, Dkt. #43-44). Mr. Charles filed a proposed stipulation and order regarding the arbitration of claims against T-Mobile on January 26, 2026 (Case No. 25 Civ. 702, Dkt. #45), but he did not file an opposition to either T-Mobile's motion to dismiss or Assurance's motion to compel arbitration. On January 28, 2026, the Court issued an Order adjourning the deadline for Mr. Charles to file his opposition to T-Mobile's motion to dismiss to February 20, 2026, in light of his *pro se* status, and it also warned him that the lack of a response would result in the Court's treatment of the motion as unopposed. (Case No. 25 Civ. 702, Dkt. #46). In the same Order, the Court clarified that because arbitration is irrelevant to T-Mobile's motion to dismiss, it would disregard Mr. Charles's proposed stipulation and order at docket entry 45. (*Id.*). To this day, Mr. Charles has not filed his

7

opposition to either T-Mobile's motion to dismiss or Assurance's motion to compel arbitration. Therefore, the Court considers both motions to be unopposed.

## DISCUSSION

**A. The Court Grants Excess's Motion to Dismiss for Lack of Subject Matter Jurisdiction in Case No. 24 Civ. 9181**

### 1. Applicable Law

Under Rule 12(b)(1), a party may move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000). "On a Rule 12(b)(1) motion, the challenge to subject-matter jurisdiction may be facial or fact-based." *O'Shea* v. *P.C. Richard & Son, LLC*, No. 15 Civ. 9069 (KPF), 2017 WL 3327602, at *4 (S.D.N.Y. Aug. 3, 2017). In resolving a facial motion, which is based solely on the complaint and its attachments, the district court must "accept[ ] all factual allegations as true and draw[ ] all reasonable inferences in favor of the plaintiff asserting jurisdiction." *Id.* In contrast, the court may consider evidence outside the pleadings when it is presented with a factual challenge. *See id.* To oppose a fact-based motion, the plaintiff "must come forward with evidence of [his] own to controvert that presented by the defendant." *Equal Vote Am. Corp.* v. *Pelosi*, No. 19 Civ. 777 (KPF), 2020 WL

1467319, at *3 (S.D.N.Y. Mar. 26, 2020) (internal quotation marks omitted) (quoting *Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017)).

In addition, Article III's constitutional limit of federal-court jurisdiction to actual cases and controversies requires a plaintiff to "have standing to pursue his claims." *Bellocchio* v. *Garland*, 614 F. Supp. 3d 11, 15 (S.D.N.Y. 2022). Standing consists of three prongs:  the plaintiff "must demonstrate that he has (i) suffered an injury in fact, (ii) that is fairly traceable to the challenged conduct of the defendant, and (iii) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 338 (2016)).

When the plaintiff is proceeding *pro se*, the district court must read his complaint "liberally" and "interpret it as raising the strongest arguments it suggests." *Gould* v. *Airway Off., LLC*, No. 15 Civ. 7964 (PAE), 2016 WL 3948102, at *3 (S.D.N.Y. July 19, 2016) (citations omitted).  "However, even a *pro se* plaintiff must establish that the Court has subject matter jurisdiction over the action, as the 'burden of demonstrating subject matter jurisdiction lies with the party asserting it.'" *Id.* (quoting *MLC Fishing, Inc.* v. *Velez*, 667 F.3d 140, 141 (2d Cir. 2011) (per curiam)).

### 2. Analysis

Excess makes two arguments about the Court's lack of subject matter jurisdiction in Case No. 24 Civ. 9181.  *First*, Excess contends that the SAC must be dismissed under Rule 12(b)(1) because Mr. Charles fails to invoke any statutory basis for this Court's subject matter jurisdiction, including either federal question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction

under 28 U.S.C. § 1332(a)(1).  (Excess Br. 5-9).  *Second*, Excess argues that Mr. Charles lacks Article III standing to pursue claims for retrospective damages as well as prospective injunctive relief.  (*Id.* at 9-17).

The Court starts and ends its analysis with the statutory basis for its subject matter jurisdiction.  Because federal courts are courts of limited subject matter jurisdiction, this Court can exercise jurisdiction pursuant to Congress's authorization under Sections 1331 and 1332 "only when a federal question is presented, or if asserting state-law claims under the [C]ourt's diversity jurisdiction, when the plaintiff and the defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000."  *Jia* v. *Weee! Inc.*, No. 24 Civ. 534 (PAE), 2025 WL 486940, at *2 (S.D.N.Y. Feb. 13, 2025) (internal quotation marks omitted) (quoting *Suarez* v. *Marcus*, No. 20 Civ. 11051 (LLS), 2021 WL 603048, at *1 (S.D.N.Y. Feb. 12, 2021)).

*First*, federal question jurisdiction is lacking here.  Under Section 1331, federal question jurisdiction exists where the plaintiff's claims arise "under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "A claim arises under federal law if the complaint 'establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"  *Jia*, 2025 WL 486940, at *3 (quoting *Empire Healthchoice Assurance, Inc.* v. *McVeigh*, 547 U.S. 677, 690 (2006)).

10

Here, none of the four claims Mr. Charles alleges against Excess in the SAC — (i) identity theft in violation of New York law, (ii) violation of New York Business Law Section 349, (iii) common-law fraud, and (iv) common-law negligence — involves a federal cause of action, as all four claims are based on New York statutory or common law.  Nor does the adjudication of the claims require the Court to resolve any substantial question of federal law.  Consequently, the Court lacks federal question jurisdiction over Mr. Charles's claims.  *See State by Tong* v. *Exxon Mobil Corp.*, 83 F.4th 122, 132 (2d Cir. 2023) ("[T]he general rule is that federal courts lack federal-question jurisdiction if the complaint does not affirmatively allege a federal claim." (internal quotation marks omitted) (quoting *Beneficial Nat'l Bank* v. *Anderson,* 539 U.S. 1, 6 (2003))); *Mathu* v. *Montefiore Med. Ctr.*, No. 23 Civ. 3838 (LTS), 2023 WL 7111031, at *3 n.2 (S.D.N.Y. Oct. 27, 2023) (determining that the court lacked federal question jurisdiction because the complaint did not contain any federal claims or facts that suggest the necessary resolution of a substantial question of federal law).

*Second,* Mr. Charles has failed to allege diversity jurisdiction.  In general, diversity jurisdiction under Section 1332(a)(1) exists where the "plaintiff is a citizen of a different state from each defendant and that the amount in controversy exceeds the sum or value of $75,000."  *Jia,* 2025 WL 486940, at *4 (internal quotation marks omitted) (quoting *Burroughs* v. *Fed. Express Corp.*, No. 18 Civ. 8641 (PAE) (SN), 2020 WL 2950976, at *4 (S.D.N.Y. Jan. 7, 2020), *report and recommendation adopted,* 2020 WL 1528119 (S.D.N.Y. Mar. 31,

2020)).  An individual's citizenship is "determined by the state in which he is domiciled, meaning 'the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'"  *Id.* (quoting *Palazzo ex rel. Delmage* v. *Corio*, 232 F.3d 38, 42 (2d Cir. 2000)); *see also id.* (explaining that an individual can have only one domicile).  In addition, a corporation "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1); *see also Hertz Corp.* v. *Friend*, 559 U.S. 77, 92-93 (2010) (explaining that "principal place of business" refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation's "nerve center" is located).

In this case, Mr. Charles has not carried his burden of demonstrating either diversity of citizenship or the requisite amount in controversy.  In the SAC, Mr. Charles confirms that he is a citizen of New York (*see* SAC ¶ 4 ("Plaintiff Nicolas A.N. Charles is a citizen and resident of the State of New York.")), but he says nothing about Excess's citizenship.  Rather, the SAC simply states that "Defendant Excess Telecom is a corporation that provides telecommunications services and does substantial business in the State of New York" and then concludes that "[t]his Court has jurisdiction over this matter." (*Id.* ¶¶ 5-6).  Without any information about Excess's state of incorporation or where it has its principal place of business, the Court cannot ascertain Excess's citizenship and determine that it is indeed different from Mr. Charles's

12

citizenship. *See, e.g., Jones* v. *Caillec,* No. 24 Civ. 689 (LTS), 2024 WL 2978611, at *3 (S.D.N.Y. June 10, 2024) ("While Plaintiff's amended complaint alleges that Plaintiff resides in New York, it contains no allegations concerning Defendant's state of residence; the Court is therefore without a basis to determine whether diversity of citizenship exists."). The Court is mindful of Mr. Charles's *pro se* status, but his "failure to allege [Excess's] place of incorporation and its principal place of business in [his] complaint is fatal to [his] allegation that the Court may exercise diversity jurisdiction." *Jenkins* v. *Virgin Atl. Airways, Ltd.,* 46 F. Supp. 2d 271, 274 (S.D.N.Y. 1999); *see id.* ("Allegations as to the state of incorporation and the principal place of business must appear on the face of the complaint lest the court erroneously exercise jurisdiction where complete diversity is lacking.").

Moreover, the SAC does not contain any information to suggest that the amount in controversy exceeds $75,000, which constitutes a separate requirement for diversity jurisdiction. While Mr. Charles requests "[a]ctual and compensatory damages in an amount to be determined at trial," statutory damages under New York General Business Law Section 349, and punitive damages (SAC at 6), the unspecified amount in the SAC's boilerplate language cannot clear the $75,000-threshold required by Section 1332. *See, e.g., Kozlowski* v. *SCI Cos.,* No. 07 Civ. 28 (KMK) (MDF), 2007 WL 9826150, at *6 (S.D.N.Y. Nov. 15, 2007) (determining that silence as to the amount was "insufficient to establish that the amount-in-controversy exceeds $75,000"), *report and recommendation adopted,* 2008 WL 11518883 (S.D.N.Y. Jan. 25,

13

2008).  Without confirming that the amount in controversy in this case exceeds

$75,000, this Court cannot exercise diversity jurisdiction over Mr. Charles's

claims.  *See Jia*, 2025 WL 486940, at *4 (collecting cases in which sister courts

in this District have dismissed complaints for failing to meet the amount in

controversy).

Because the Court does not have the statutory power to adjudicate this

case under either Section 1331 or Section 1332(a)(1), it must dismiss the case

without prejudice for lack of subject matter jurisdiction, and it need not reach

the issue of standing.  *See Becker* v. *Levitt*, 489 F.2d 1087, 1088 (2d Cir. 1973)

("We do not reach the question of standing as we find the complaint fails to

present any substantial federal question and it is thus clear that the court

below lacked subject matter jurisdiction."); *Johnson* v. *Smithsonian Inst.*, 80 F.

Supp. 2d 197, 200 (S.D.N.Y. 2000) ("Lacking subject matter jurisdiction, the

court need not reach the issue of standing.").

**B.    The Court Grants T-Mobile's Motion to Dismiss for Failure to State a Claim in Case No. 25 Civ. 702**

**1.    Applicable Law**

On a Rule 12(b)(6) motion, the court "draw[s] all reasonable inferences in

[the plaintiff's] favor, assume[s] all well-pleaded factual allegations to be true,

and determine[s] whether they plausibly give rise to an entitlement to relief."

*Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation

marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d

Cir. 2009)); *see Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009).  A plaintiff is

entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). Nevertheless, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). Indeed, a plaintiff must do more than provide a "formulaic recitation of the elements of a cause of action" — that is, his "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In *pro se* cases, the court must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (internal quotation marks omitted) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007)). The Supreme Court has instructed that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle* v. *Gamble*, 429 U.S. 97, 106 (1976)). At the same time, even "a *pro se* complaint must state a plausible claim for relief." *Walker* v. *Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

### 2.    Analysis

The Complaint in Case No. 25 Civ. 702 is sparse — so much so that it only mentions T-Mobile once in the caption and once more in the context of Mr.

Charles's general allegation that the two Defendants, T-Mobile and Assurance, disconnected his Lifeline phone service without cause. (Compl. at 1). The rest of the Complaint focuses on Assurance and does not specify any conduct by T-Mobile. Nor does the Complaint assert any legal causes of action besides requesting $100 million in compensatory and punitive damages. (*See id.* at 1-2). The Court therefore agrees with T-Mobile that Mr. Charles has failed to state a plausible claim for relief against T-Mobile, especially because the Complaint "contains no allegations indicating how the defendant violated the law or injured the plaintiff." (T-Mobile Br. 2).

Even construing the Complaint liberally in light of Mr. Charles's *pro se* status, the Court must dismiss any claims against T-Mobile because there are no factual or legal allegations about T-Mobile in the Complaint. *See, e.g., Holloway* v. *Carey*, 482 F. Supp. 551, 553 (S.D.N.Y. 1979) (dismissing claims against several defendants who were listed in the caption of the case but against whom the plaintiff "literally ha[d] failed to assert [a]ny claim whatsoever"); *Haczynska* v. *Mount Sinai Health Sys., Inc.*, 738 F. Supp. 3d 300, 323 (E.D.N.Y. 2024) (granting motion to dismiss "[b]ecause Plaintiffs failed to make any allegations against [the defendant] and now fail to respond to the motion to dismiss").

**C.    The Court Grants Assurance's Motion to Compel Arbitration in Case No. 25 Civ. 702**

###    1.    Applicable Law

Under the Federal Arbitration Act (the "FAA"), a party to an arbitration agreement can petition the appropriate federal district court for an order compelling arbitration when its counterparty "fail[s], neglect[s], or refus[es] ... to arbitrate" under the terms of the agreement.  9 U.S.C. § 4.  That is because "[t]he FAA reflects 'a liberal federal policy favoring arbitration agreements,'" and it "places arbitration agreements on 'the same footing as other contracts.'" *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (first quoting *AT&T Mobility LLC* v. *Concepcion*, 563 U.S. 333, 346 (2011); and then quoting *Schnabel* v. *Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)).  Indeed, Section 2 of the FAA provides that "[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]"  9 U.S.C. § 2.

In ruling on a motion to compel arbitration, a district court must evaluate two prongs that determine arbitrability: "[i] whether the parties agreed to arbitrate, and, if so, [ii] whether the scope of that agreement encompasses the claims at issue."  *Holick* v. *Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (quoting *Bank Julius Baer & Co., Ltd.* v. *Waxfield, Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005), *abrogated on other grounds by*, *Granite Rock Co.* v. *Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010)).  The standard under which the court

evaluates evidence pertaining to arbitrability is similar to that for summary judgment — that is, the court must consider all relevant and admissible evidence and draw all reasonable inferences in favor of the non-moving party. *Meyer*, 868 F.3d at 74.  "If there is an issue of fact as to the making of the agreement for arbitration, then a trial [may be] necessary."  *Bensadoun* v. *Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing 9 U.S.C. § 4).

### 2.    Analysis

The Court grants Assurance's motion to compel arbitration in Case No. 25 Civ. 702 because both prongs of arbitrability are satisfied here.

*First*, there is a valid and enforceable agreement to arbitrate between the parties.  "Whether the parties have agreed to arbitrate is generally a question of state contract law."  *Edmundson* v. *Klarna, Inc.*, 85 F.4th 695, 702 (2d Cir. 2023).  In New York, "a binding contract requires an objective manifestation of mutual assent, through either words or conduct, to the essential terms comprising the agreement."  *GT Commodities* v. *IXM S.A.*, No. 24 Civ. 8499 (LGS), 2025 WL 2218753, at *5 (S.D.N.Y. Aug. 5, 2025) (internal quotation marks omitted and alteration adopted) (quoting *Wu* v. *Uber Techs., Inc.*, 43 N.Y.3d 288, 299 (2024)).  An offeree like Mr. Charles is bound to the contractual terms so long as he is placed on inquiry notice of those terms.  *Id.*

Here, Mr. Charles agreed to arbitrate when he signed onto Assurance's terms and conditions through activating its telecommunications services.  Mr. Charles was a customer of Assurance from 2017 to 2025, holding five different accounts over the course of his commercial relationship with Assurance.  (Case

18

No. 25 Civ. 702, Bollig Decl. ¶¶ 3-5, 7).  Indeed, in the Complaint, Mr. Charles admits that he used Assurance for his phone service and had an active account with Assurance as of January 2025.  (Compl. at 1-2).  When he initiated telecommunications services with Assurance, Mr. Charles agreed to be bound by Assurance's terms and conditions.  (Case No. 25 Civ. 702, Bollig Decl. ¶ 6; *see id.*, Ex. A (Assurance's terms and conditions specifying that a customer accepts the agreement by activating Assurance's services)).  Those terms and conditions included a mandatory arbitration clause.  (Case No. 25 Civ. 702, Bollig Decl., Ex. A at 11).  Therefore, applying the principles of New York contract law, this Court finds that the parties are subject to a binding arbitration agreement.

*Second*, the arbitration agreement covers the issues raised by Mr. Charles in this case.  "When considering whether claims fall within the scope of an arbitration clause," courts typically "analyze the factual allegations made in the plaintiff's complaint" and determine whether those allegations touch on matters covered by the agreement.  *Holick*, 802 F.3d at 395.  In this case, Assurance's mandatory arbitration clause specifies that "any and all claims … related to or concerning … [Assurance's] services, devices[,] or products" must be "resolved by individual binding arbitration or in small claims court."  (Case No. 25 Civ. 702, Bollig Decl., Ex. A at 11).  The Court agrees with Assurance that "Mr. Charles's claims [here] … are best characterized as service issues," as he complains about Assurance's disconnection of his phone service and mishandling of his account.  (Assurance Br. 6; *see* Case No. 25 Civ. 702,

19

Compl. at 1-2).  Accordingly, Mr. Charles must arbitrate his claims against Assurance.

Finally, Assurance requests under 9 U.S.C. § 3 that the Court stay Case No. 25 Civ. 702 while arbitration is pending.  (Assurance Br. 6-7).  The Court grants that request, especially in light of the Supreme Court's holding that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."  *Smith* v. *Spizzirri*, 601 U.S. 472, 478 (2024).

## CONCLUSION

For the foregoing reasons, Excess's motion to dismiss is GRANTED in Case No. 24 Civ. 9181, and T-Mobile's motion to dismiss and Assurance's motion to compel arbitration are each GRANTED in Case No. 25 Civ. 702.  The Court dismisses Mr. Charles's claims in Case No. 24 Civ. 9181 without prejudice because it lacks subject matter jurisdiction to consider them.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close Case No. 24 Civ. 9181.  The Clerk of Court is further directed to terminate T-Mobile as a Defendant in Case No. 25 Civ. 702. The remaining parties in Case No. 25 Civ. 702 are directed to proceed to arbitration and provide joint updates on the status of arbitration every six months, beginning on or before **November 30, 2026**.  In addition, Case No. 25 Civ. 702 is STAYED pending arbitration.

The Clerk of Court is directed to mail a copy of this Opinion to Plaintiff at his address of record.

SO ORDERED.

Dated:   May 28, 2026
         New York, New York

KATHERINE POLK FAILLA
United States District Judge